## H. B. & S. K. Walker, Trading as Chicago Heat Proof Table Mat Co., Appellees, v. Marshall Field & Company, Appellant.

## Gen. No. 17,406.

1. AGENCY—*when purchase must be regarded as made for principal.* Where an agreement by the seller with a department manager of the buyer to sell goods at a certain maximum price is a proposal which may be withdrawn and a sale is made thereunder when an order is given while the proposal is open, purchases made by orders of one employed in a section controlled by such manager, who is authorized to give such orders, must be regarded as purchases made for the buyer.

2. SET-OFF—*secret commissions to agent.* In an action for the price of goods sold, the buyer is entitled to set off secret commissions paid by the seller to the agent of the buyer which were included in the price charged for the goods.

3. SET-OFF—*when claim sufficiently certain.* A claim is sufficiently certain to be the subject of set off where it is for a certain per cent. of the price of goods, which can be readily ascertained by computation.

Appeal from the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding. Heard in this court at the March term, 1911. Reversed with judgment here. Opinion filed April 21, 1913.

FRANK P. LEFFINGWELL and ROBERT J. FOLONIE, for appellant.

DELBERT A. CLITHERO and WILL J. BELL, for appellees.

MR. JUSTICE BAKER delivered the opinion of the court.

The claim of the plaintiffs in this case is for goods sold and delivered by them to the defendant corporation, Marshall Field & Co., at the price of $4046.60. The indebtedness of the defendant in the sum claimed is conceded and the only question in the case is as to the right of the defendant to set off against such claim $200 paid by plaintiffs to Cummings, and $3,112 paid to Davis, while Cummings and Davis were in the employ of defendant. The trial Court held that the defendant was not entitled to set off the moneys so paid against plaintiffs' demand and gave judgment for the plaintiffs for $4046.60 and costs. The evidence fails to show the circumstances or agreement between plaintiffs and Cummings under which the $200 was paid to Cummings, and fails to show a right in the defendant to set off such sum against the claim of the plaintiffs.

The contention of defendant was that the moneys paid to Davis were secret commissions paid to him on the sale of goods bought by him of plaintiffs as the agent of the defendant.

In the retail store of the defendant James A. Leask was department manager and buyer of a department which embraced Section 12, in which Davis was employed. Leask and plaintiffs agreed on the maximum prices plaintiffs were to charge for their goods. Davis had authority to order goods for his section from the plaintiffs at a price not greater than that agreed on between plaintiffs and Leask, and in case he, in Leask's absence, might buy such goods at a lower price, he had authority to do so. Davis made no bargain with plain-

tiffs as to the price of any of the goods ordered, but gave orders to plaintiffs and the goods were billed at the prices agreed on between Leask and plaintiffs.

The agreement between plaintiffs and Leask was, in substance, only a proposal on the part of plaintiffs to sell to defendant the goods mentioned, at the prices agreed on. The plaintiffs might withdraw their offer so long as it was not accepted and a sale was made when the defendant, while the proposal was still open, gave plaintiffs an order for goods. Such orders Davis was authorized to give and did give. The purchases thereby made must be regarded as purchases made for the defendant by the giving of such orders. Plaintiffs paid to Davis ten per cent. on the amount of such purchases, and such payments must be regarded as commissions paid to him on the purchases made by him for defendant. The facts are, then, that the seller and the buyer's agent, known to the seller to be such, agreed on a price to be paid by the buyer, one-tenth of which was to go to the buyer's agent. To put it in plain language, it was a bribe paid by the seller to the agent of the buyer.

The rule that an agent for sale or purchase must not act for the other party at the same time or take a secret commission from him has long been settled law, and the later cases if anything increase the wholesome strictness of the law. In such a case it is also well settled that the principal may, ''claim the money from his agent; or he may avoid the sale and recover the money which has been paid under it; or he may sue the agent and the other party jointly or severally to recover damages for the fraud in inducing the sale.'' Leake Law of Contracts (4th Ed.) 410.

The question whether a buyer of goods may recover, as money had and received, from the seller, secret commissions paid by the seller to the agent of the buyer, does not appear to have been expressly decided in this country; but the doctrine that he may so re-

cover must be regarded as settled in England by recent cases. In Salford v. Lever, 63 L. T. Rep. 658, 1 Q. B. 168, it was held by the Court of Appeal (1891) that where an agent, who had been bribed to do so, induces his principal to enter into a contract with the person who has paid the bribe, and the contract is disadvantageous to the principal, the principal may recover from the vendor damages for any loss he has sustained by reason of entering into the contract. The plaintiff in that case claimed the money either by way of damages for the defendant's fraud, or, alternatively, as a liquidated sum wrongfully in the defendant's hands; in other words, as money had and received for the plaintiff's use. In Grant v. Gold Exploration Syndicate, 82 L. T. Rep. 5, 1 Q. B. 233 (Court of Appeal 1899), Grant, the owner of mineral property in British Columbia, gave to Govan, an agent of the defendant syndicate, an option as to his property, to enable Govan to form a company in London to purchase the property, and agreed to give Govan ten per cent. of the amount of stock and money he should receive for the property. The amount of cash commission to which Govan would be entitled was £2,500, but in consideration of payment before it was due he agreed to accept and was paid by the plaintiff £2,000. Grant sued the syndicate on their note for £5,000 and they counterclaimed the sum of £500, in respect of commission agreed to be paid by the plaintiff to defendant's agent. In his opinion Smith, L. J., said: "A great deal of argument was addressed to us whether an action for money had and received would lie at the suit of the defendants against the plaintiff in this case. Lord Esher (in Salford v. Lever, *supra*) said, it signifies not what it may be called, whether damages or money had and received; and Lindley, L. J. said: 'It is obvious that in some form of action the corporation have a right to recover. Under the old practice I think they could have recovered by an action for money had

and received; probably they could have recovered in more ways than one.' "  In Hoveden v. Mithoff, 83 L. T. Rep. 41 (Court of Appeal 1900), the buyer of the plaintiffs had bought of the defendant cigars and cigarettes, for which plaintiffs had paid upwards of £28,000. They then discovered that defendant had made gifts of money in the nature of bribes to plaintiffs' buyers amounting to £710, or about 2½ per cent. on the invoice price of the goods sold to the plaintiffs. Plaintiffs then brought an action against the seller and it was held that they were entitled to recover the amount of the bribes as money had and received. In his opinion Smith, L. J., said: "If a vendor bribes a purchaser's agent of course the purchase money is loaded by the amount of the bribe. It cannot be denied. In this case the purchase money was £28,000, in which was the £700 given to the purchaser's agent. Of course the vendor would have sold the goods for £28,000 less £700. Therefore he has in his pocket £700 money of the purchasers;" and Romer, L. J., said (83 L. T. Rep. 43): "If a gift be made to a confidential agent with the view of inducing the agent to act in favor of the donor in relation to transactions between the donor and the agent's principal, and that gift is secret as between the donor and the agent—that is to say, without the knowledge and consent of the principal—then the gift is a bribe in the view of the law. If a bribe be once established to the court's satisfaction, then certain rules apply. Amongst them the following are now established, and, in my opinion, rightly established, in the interests of morality with the view of discouraging the practice of bribery. First, the court will not inquire into the donor's motive in giving the bribe, nor allow evidence to be gone into as to the motive. Secondly, the court will presume in favor of the principal and against the briber and the agent bribed, that the agent was influenced by the bribe; and this presumption is irrebuttable. Thirdly, if the agent

be a confidential buyer of goods for his principal from the briber, the court will assume as against the briber that the true price of the goods as between him and the purchaser must be taken to be less than the price paid to, or charged by, the vendor by, at any rate, the amount or value of the bribe. If the purchaser alleges loss or damage beyond this, he must prove it." In Cohen v. Kuske & Co., 83 L. T. Rep. 102 (Q. B. Div. 1900), it was held that where a secret commission is paid to a buyer acting for his principal, the amount of such commission can be recovered at the suit of the principal from the donor, although there is no evidence that the price of the goods has been enhanced by the amount of the commission. In that case it was said by Bruce, J.: "I think it matters not whether a different price would have obtained had there been no bargain for a commission. In this sale it was a term, it entered into the bargain, that a sum of money which was part of the apparent or pretended price of the goods was paid over to Koenig (plaintiff's buyer) for his own use. That money was in law not Koenig's money, but the money of the plaintiff. And if the defendant paid over to Koenig, with knowledge of the circumstances, money which was the plaintiff's money, intending that Koenig should keep it for his own use and that the plaintiffs should be kept in ignorance of the payment, I think they are liable to the plaintiffs for the amount."

"But an agent is entitled to retain for his own use allowances which are customary in the business and known to the principal as a recognized mode of remuneration; as the customary commissions and discounts received by an insurance broker in dealing with underwriters." Leake on Contracts (4th Ed.), 410; Aetna Ins. Co. v. Church, 21 Ohio St. 492.

A claim is sufficiently certain to be the subject of set-off if it is capable of being reduced to a certainty by computation or calculation. Kelley, Maus & Co. v.

Caffrey, 79 Ill. App. 278. In this case plaintiffs paid Davis ten per cent. on the goods purchased by him for the defendant. The amount so paid could be readily ascertained by computation or calculation and was a proper subject of set-off.

The goods bought of Walker and sold in section 12 between January 1, 1907, and March 1, 1910, amounted to $31,120.25, on which Davis was paid a commission of $3,112. The plaintiffs are entitled to judgment here for $934.60, the difference between $4,046.60 and $3,112. Judgment reversed with judgment here for $934.60.

*Reversed with judgment here.*

Finding of facts. The Court finds as facts in this case that the plaintiffs in the Municipal Court, H. B. and S. K. Walker, paid to Fred S. Davis, the agent of the defendant, Marshall Field & Co., who purchased goods of the plaintiffs for the defendant to the amount of $31,120.25, moneys amounting to thirty-one hundred and twelve dollars ($3,112) without the knowledge of the defendant as secret commissions on the goods so purchased by Davis for the defendant, intending that Davis should keep said moneys for his own use, and that the defendant should be kept in ignorance of such payments; and that the sums of money so paid to Davis were a part of the apparent or pretended prices of the goods.