## Central Illinois Public Service Company, Appellee, v. Raymond C. Schell, Appellant.

### Gen. No. 7,856.

1. EQUITY—*relief granted under prayer for general relief.*    There may be relief in equity under a prayer for general relief though complainant fails to prove all of the allegations of the bill.

2. APPEAL AND ERROR—*no reversal if proper result reached.* If proper result has been obtained in the court below, a decree in equity will not be reversed because of erroneous rulings on exceptions to master's report.

3. AGENCY—*public policy as to double agency.*    It is contrary to public policy for an agent, employed to negotiate a sale, purchase, lease or exchange, to make a contract for compensation with the other party to the transaction, though no actual fraud exists.

4. TRUSTS—*constructive trust as to profits of contract divided between one party and agent of other.*    Where owner of trucks entered into agreement with superintendent of public utility approving contracts and consideration paid for trucks to pay superintendent one-half of profits realized on contract, the moment he received any part or portion of the public utility's money he became a trustee *ex maleficio* and subject to the jurisdiction of a court of equity, which will impress a constructive trust upon

Central Illinois P. S. Co. v. Schell, 238 Ill. App. 560.

the money in his hands, though there was no actual fraud and the contract price was reasonable.

5. TRUSTS—*necessity for provision in decree protecting rights of one dividing profits with agent of another.* Where defendant owner of trucks leased them to plaintiff and agreed with plaintiff superintendent to give the latter one-half of profits made, plaintiff was entitled to sue defendant and the superintendent, or either of them, and defendant cannot complain that a decree was not taken against the superintendent for his benefit where both were sued.

Appeal by defendant from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding. Heard in this court at the April term, 1925. Affirmed. Opinion filed October 27, 1925.

THOMAS D. MASTERS and WALTER T. DAY, for appellant.

VAUSE & KIGER and STEVENS & HERNDON, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

Appellant brought a suit at common law against appellee to recover the sum of $4,714.20 on account of the leasing of motor trucks by him to appellee, and thereupon appellee exhibited its bill of complaint for an injunction and an accounting in the circuit court of Sangamon county against appellant and one William F. Gilman as defendants, and a temporary injunction was granted, restraining the prosecution of the action at law.

The bill charged that the appellee was a public service corporation and in the year 1920 and thereafter was engaged in extending service to various communities in central Illinois, and that in the construction of lines of wire to said communities it stood at that time in need of various motor trucks to be used by its servants. It was further charged that the defendant William F. Gilman was the general superintendent of the appellee company, and the only per-

son in charge of appellee's affairs in the division whereof Beardstown was headquarters and where appellant's service was employed.    It was further charged that the said William F. Gilman and appellant entered into a conspiracy for the purpose of leasing motor trucks to appellee at high and extortionate rates and were in partnership in the division of the profits upon such service and in pursuance thereof. The said Gilman, acting for appellee, entered into an agreement with the appellant to furnish the service of motor trucks for appellee, for which the appellant charged extortionate and unreasonable hourly rental charges and the profits thereof were divided between said appellant and Gilman, the agent and general superintendent of appellee.

Appellant answered the bill and filed a cross-bill, claiming and praying to recover a judgment against appellee for the sum of $4,714.20, the balance due on account for such service from appellee to appellant. Appellee answered the cross-bill, there were replications filed and the cause was submitted to the master, who took the testimony and made a report of his findings of fact and conclusions of law to the court, to which objections were filed by appellant and being overruled were made exceptions before the chancellor, and upon a hearing were overruled and a decree entered for appellee, finding appellant indebted to the appellee in the sum of $26.07 for which a judgment was entered against appellant and a perpetual injunction, restraining appellant from prosecuting said suit at law.    Appellant has brought the record to this court for review.    The defendant Gilman did not answer the bill and was defaulted.    The master's report, which was approved by the court, found that appellant and said Gilman were not copartners but that said Gilman was the general superintendent of appellee company, and that in February, 1920, appellee entered into an agreement with appellant, Schell, to rent motor trucks from said appellant at a stipulated rental per hour,

with certain changes from time to time in the hourly rental rate, and that during the time of Gilman's employment as general superintendent of appellee company, such agreement was subject to approval and was in fact approved by the said Gilman.

It was further found by the master that during said time, pursuant to an agreement entered into between the said Gilman and appellant, appellant paid to said Gilman the sum of $4,740.27 as a portion of the profits accruing to appellant from leasing said motor trucks, the agreement being, as testified to by appellant, that Gilman should have one-half of the profits after the trucks were paid for out of the rental earnings from appellee. It was further found that appellee had had no knowledge of the arrangement and that the rates charged by appellant for such motor truck rentals were reasonable and were the usual and customary rates for like services in the vicinity where furnished. The master found that the sum of $4,740.27 paid by appellant to Gilman became and was the property of appellee and that appellee was entitled to recover the same from either appellant or Gilman and that appellee was entitled to set off said sum against the amount owing by appellee to appellant and to have a decree for the balance in the sum of $26.07. There is no conflict in the testimony except as to whether Gilman approved the rates charged and upon that question the proofs are conclusive in support of the master's report and the decree. Some question is raised by appellant that inasmuch as appellee has not proven all of the allegations of its bill, for example, that it has not proven that a partnership between appellant and Gilman existed, and that the rates charged by appellant were unreasonable and extortionate and that there is no proof that Gilman was a party to making or fixing the particular rates charged, that appellee is not entitled to equity upon its original bill. We cannot agree with appellant on this contention. The bill prayed for general relief.

The ultimate, final and only question in this court is, was the decree rendered by the court the proper one under the law and the evidence? Briefly stated, the question is, was the proper result obtained in the court below?

In *Kelly v. Fahrney*, 242 Ill. 240, at page 255, it is said:

"Without regard to the finding of the master upon any particular question of fact, the ultimate and final question in this court is, was the decree rendered by the court the proper one under the law and the evidence? If the proper result has been obtained in the court below the decree will not be reversed in this court because of alleged erroneous rulings on exceptions to the master's report."

In *Chechik v. Koletsky*, 311 Ill. 433, at pages 438-439, it is said:

"All the facts are open for the consideration, in the first instance, of the trial court, and in case of an appeal, by the reviewing court. Without regard to the finding of the master upon any particular question of fact, the ultimate and final question in this court is, was the decree rendered by the chancellor the proper one under the law and the evidence? *Corbly v. Corbly*, 280 Ill. 278; *Kelly v. Fahrney*, 242 Ill. 240; *Fairbury Union Agricultural Board v. Holly*, 169 Ill. 9."

It is a well-settled rule, founded on grounds of public policy, that an agent employed to negotiate a sale, purchase, lease or exchange may not make a contract for compensation with the other party to the transaction. *Cottom v. Holliday*, 59 Ill. 176; *Young v. Trainor*, 158 Ill. 428; *Bunn v. Keach*, 214 Ill. 259; *Law v. Ware*, 238 Ill. 360; *Stemm v. Gavin*, 255 Ill. 480; *Dennis v. McCagg*, 32 Ill. 429; *Davis v. Hamlin*, 108 Ill. 39; *Hair Co. v. Daily*, 161 Ill. 379; *Salsbury v. Ware*, 183 Ill. 505.

The fact that no actual fraud exists, or that the principal is not actually injured, does not prevent the application of the above rule, which is not merely

remedial of actual wrong, but is intended to be preventative of wrong. *Fox v. Simons,* 251 Ill. 321; *Smythe's Estate v. Evans,* 209 Ill. 382; *Gilman, C. & S. R. Co. v. Kelly,* 77 Ill. 434; *Consumers Co. v. Parker,* 227 Ill. App. 552; *Rasmussen v. Hansen,* 176 Iowa 26; *Rice v. Wood,* 113 Mass. 133; *Scribner v. Collar,* 40 Mich. 375; 2 Pomeroy's Eq. Jur. (4th Ed.), sec. 959, p. 2055; *Conant v. Riseborough,* 139 Ill. 383.

Appellant admits that he made the agreement to give Gilman one-half of the net profits, and in that state of the record the moment he received any part or portion of appellee's money, he became a trustee *ex maleficio,* and subject to the jurisdiction of a court of equity. In such case, equity will impress a constructive trust upon the money in his hands. 3 Pomeroy's Eq. Jur. (3rd Ed.), secs. 1052-1053, p. 2033; *Barnes v. Thuet,* 116 Iowa 359, 89 N. W. 1085; *Michigan Trust Co. v. Probasco,* 29 Ind App. 109, 63 N. E. 255; *Pope v. Dapray,* 176 Ill. 478; *Reid, Murdoch & Co. v. Sheffy,* 99 Ill. App. 189; *Norton v. Hixon,* 25 Ill. 439.

The facts in this case bring it within the broad ground of equity laid down in *Fox v. Simmons, supra,* in which the court holds (p. 321):

"The evidence is not controverted that defendants in error, Simmons and McCamey, at the time they obtained these leases, were salaried employees of plaintiff in error, with all their expenses paid. It is a familiar doctrine, frequently recognized by this court, that an agent cannot, either directly or indirectly, have an interest in the business of the principal, within the scope of his agency, without the consent of his principal, freely given, after full knowledge by the principal of every matter known to the agent which might in any way affect the interests of the principal, and it is of no consequence in such case that no fraud was intended, or that no advantage was, in fact, derived by the agent. (1 Perry on Trusts, 6th Ed., sec. 206; *Tyler v. Sanborn,* 128 Ill. 136; 1

Pomeroy's Eq. Jur., sec. 155; *Prince v. Dupuy,* 163 Ill. 417.)''

We have examined all the cases cited by appellant and none of them state a different rule. *Walker v. Marshall Field & Co.,* 179 Ill. App. 3, with the English cases cited, specifically affirms the rule and holds:

"That money was in law not Koenig's money but the money of the plaintiff, and if the defendant paid over to Koenig with knowledge of the circumstances, money which was the plaintiff's money, intending that Koenig should keep it for his own use, and that the plaintiff should be kept in ignorance of the payment, I think they are liable to the plaintiff for the amount."

But appellant attempts to differentiate this case by contending there is no competent evidence tending to show that appellee's employee, Gilman, either fixed or authorized the rental rate charged by appellant for the use of his motor trucks. On the contrary, the uncontradicted testimony is that Gilman knew of the rates charged, approved them and interested himself at different times to have appellant placed on the company's regular pay roll and urged the payment of appellant's bills in a more speedy manner.

Appellant's objection to the testimony of the witnesses Clayton, Musser and Luecke as to agency was properly overruled. (*Rice & Bullen Malting Co. v. International Bank,* 185 Ill. 427; *Pittsburg, C., C. & St. L. Ry. Co. v. Gage,* 286 Ill. 220.) In this case appellee was entitled to sue appellant and Gilman or either of them and appellant cannot complain that a decree was not taken against Gilman for his, appellant's benefit. (*Tandrup v. Sampsell,* 234 Ill. 530.)

Finding no error in the record, the decree of the circuit court of Sangamon county is affirmed.

*Affirmed.*